IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| MARTY GILBERT, | ) | |
| | ) | |
| Plaintiff, | ) | NO. 3:09-0508 |
| | ) | JUDGE HAYNES |
| v. | ) | |
| | ) | |
| COUNTRY MUSIC ASSOCIATION, | ) | |
| INC., COUNTY MUSIC TELEVISION, | ) | |
| INC MTVN DIRECT, INC., CENTRAL | ) | |
| CITY PRODUCTIONS, INC., | ) | |
| INTERNATIONAL ALLIANCE OF | ) | |
| THEATRICAL STAGE EMPLOYEES, | ) | |
| MOVING PICTURE TECHNICIANS, | ) | |
| ARTISTS AND ALLIED CRAFTS OF | ) | |
| THE UNITED STATES AND CANADA, | ) | |
| INTERNATIONAL ALLIANCE OF | ) | |
| THEATRICAL STAGE EMPLOYEES, | ) | |
| MOVING PICTURE TECHNICIANS, | ) | |
| ARTISTS AND ALLIED CRAFTS OF | ) | |
| THE UNITED STATES AND CANADA, | ) | |
| LOCAL 46, | ) | |
| | ) | |
| Defendants. | ) | |

**M E M O R A N D U M**

Plaintiff, Marty Gilbert, filed this action under Title VII of the Civil Rights Act of 1964,[1] as amended, 42 U.S.C. § 2000e et seq., and of the Labor Relations Management Act ("LRMA"). 29 U.S.C. §§ 185 and 187, against the Defendants: the International Alliance of Theatrical State Employees, Moving Picture Technicians, Artists and Allied Crafts of the United States and Canada ("IATSE:); IATSE's Local 46 ("Local 44" or "the Local"); Country Music Association, Inc., ("CMAI"), a Tennessee not for profit organization; Central City Productions, Inc.; MTVN

---

[1] Title VII is cited in the amended complaint (Docket Entry Nos 5 at pp. 2, 3, 9 and 20 n.1) and Plaintiff's motion for a stay and motion to file a second amended complaint refer to Plaintiff's assertions of his Title VII claim.

Direct, Inc. ("MTVN"); and Country Music Television, Inc. ("CMT"). The Defendants are entities that refer and have union members for entertainment events. Plaintiff also asserts diversity jurisdiction under 28 U.S.C. §1332 for his claims under the Tennessee Human Rights Act ("THRA"), Tenn Code Ann. § 4-21-101 et seq. as well as his state common law claims for breach of contract and interference of contract.

Plaintiff's federal claims are for sex discrimination based upon his sexual orientation and retaliation under Title VII and Union Defendants' alleged breaches of their duty of fair representation under the LMRA. Plaintiff's THRA claims parallel his Title VII claims. Plaintiff's contract claims against MTVN, CMT and the CMA are based upon their "exclusive hiring hall agreement" with Local 46's hiring hall.

Before the Court are the following motions: (1) Plaintiff's motion to stay proceedings (Docket Entry No. 7); IATSE's motions to dismiss and Local 46's (Docket Entry Nos. 14 and 27); (2) Defendants MTVN's and CMT's motion to dismiss; (Docket Entry No. 18); (3) Defendant Central City's motion to dismiss(Docket Entry No. 35); (4) IATSE's and Local 46's motion for leave to file a reply (Docket Entry No. 38); (5) Plaintiff's motion for extension of time fo file response to reply (Docket Entry No. 41); and (6) MTVN's and CMT's motion for sanction. (Docket Entry No. 48); and Plaintiff's motion to file a second amended complaint. (Docket Entry No. 56).

## Analysis of the Complaint

In summary, Plaintiff alleges that he is "an openly homosexual male" (Docket Entry No. 5, Amended Complaint at ¶ 18) and that the Defendants' agents and employees engaged in discriminating conduct because of his sexual preference. Plaintiff has worked on CMT-related

projects/events through the Agreement between CMT Productions, Inc. and Local 46. Id. at ¶ 11. Id. at ¶¶ 6-8). CMA, CCP and MTV/CMT are distinct corporate entities. Local 46 is a "labor organization," and Plaintiff is a dues-paying member of the Local.

Specifically, in 2007, Local 46 crew member in connection with the annual CMA Awards show, "threatened to stab Plaintiff and any other 'faggot' working with them." Id. at ¶¶ 19-22, 31. According to Plaintiff, after he reported the member's threats during "a Local 46 Executive Board meeting" in May 2008, another "Local 46 member Tim Ashburn loudly uttered bigoted comments regarding Plaintiff's sexuality[,] . . . . but [the] Local 46 officials present did nothing to respond to Mr. Ashburn's comments. Id. at ¶¶ 27-28. According to Plaintiff, "Local 46 refused to refer Plaintiff to jobs that [he] was qualified to perform." Id. at ¶¶ 26, 30-32, 58-62. "Local 46 [also] changed its referral process" and "its method of providing rigging certification tests" in order "to prevent Plaintiff from qualifying to be referred to certain jobs." Id. at ¶¶ 43-44.

As to his claims against Local 46, Plaintiff alleges that Defendants "Local 46 and International IATSE" failed "to take required affirmative action" which "resulted in Plaintiff's loss of employment opportunities and substantial compensation and benefits." Id. at p. 12. Plaintiff admits that "International IATSE's Constitution requires Local 46 members [including Plaintiff] to appeal the International IATSE the decision of Local 46 that affect[s] [his] union membership and exhaust internal appeal remedies before seeking any remedy in civil court." Id. at ¶ 71. In this first amended complaint, Plaintiff alleges that he is "still in the process of exhausting his internal appeal options through International IATSE regarding his membership suspension and continuing acts of retaliation and discrimination." On July 7, 2009, International

3

IATSE sent to Plaintiff a letter by certified mail informing Plaintiff that his "appeal dated June 26, 2009 to the General Executive Board, from the International President's decision dated May 26, 2009, will be presented to the Board at its next regular mid-summer meeting which is scheduled to be held in Orlando, Florida the week of July 20, 2009." (Docket Entry No. 15-3, Exhibit C). These allegations also underlie Plaintiff's claims of intentional interference with his employment opportunities and his THRA sex discrimination.

### B. Conclusions of Law

As a threshold issue, Plaintiff cites the Defendants' attachment to their motions to dismiss as converting their motions into motions for summary judgment. The Defendants submitted among other documents, copy of the agreement that the Plaintiff characterized as "the exclusive hiring hall agreement."[2] "When a court is presented with a Rule 12(b)(6) motion, it may consider . . . exhibits attached to defendant's motion to dismiss so long as the are referred to in the Complaint and are central to the claims contained therein." Bassett v. Nat'l Collegiate Athletic Ass'n, 528 F.3d 426, 430 (6th Cir. 2008). "[D]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [his] claim." Weiner v. Klais & Co., 108 F.3d 86, 89 (6th Cir. 1997). Because Plaintiff's amended complaint refers to the union and exclusive referral agreements and grievance process, the Court considers those submissions.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129

---

[2](Docket Entry No. 21, Carmichael Affidavit Exhibit A thereto). The corporate signatory to the exclusive referral agreement is CMT Productions, Inc., an affiliate of CMT and MTVN. Id. at ¶¶ 3, 6, and 10).

4

S.Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. To be sure, a complaint's well-pled factual allegations must be accepted true, Twombly, 550 U.S. at 555, but the Court cannot assume "that the [plaintiff] can prove facts that [he] has not alleged or that the defendants have violated the . . . . laws in ways that have not been alleged." Ass'n Gen. Contractors v. Cal. State Counsel of Carpenters, 459 U.S. 519, 526 (1983).

First, as a matter of law, in the Sixth Circuit, Title VII does not extend to discrimination claims based solely upon sexual orientation or perceived sexual orientation. Vickers v. Fairfield Medical Ctr.. 453 F.3d 757, 762 (6th Cir. 2006) ("sexual orientation is not a prohibited basis for discriminatory acts under Title VII"). Thus, Plaintiff's Title VII claims fail as a matter of law.

As to Plaintiff's LMRA claims, for a breach of duty of fair representation, a union must represent the Plaintiff in a grievance or arbitration proceedings, and must act in a manner that is "discriminatory, dishonest, arbitrary, or perfunctory." IBEW v. Heckler, 481 U.S. 851 n.6 (1987). "A hybyrd § 301 action involves two constituent claims; breach of collective bargaining agreement by the employer and breach of the duty of fair representation by the Union." Black v. Ryder/P.I.E. Nationwide, Inc., 15 F.3d 573, 578 (6th Cir. 1994). These claims are "inextricably interdependent." Del Costello v. Teamsters, 462 U.S. 151, 164 (1983).

Plaintiff fails to allege that IATSE ever provided representation to Plaintiff, or that IATSE was party to a contract with any employer for whom Plaintiff performed services. Plaintiff fails to plead facts of IATSE's exclusive representation nor that IATSE engage in arbitrary or discriminatory or bad acts as to Plaintiff. Plaintiff concedes that International

5

IATSE lacked authority to alter any of Local 46 against Plaintiff. (Docket Entry No. 5, First Amended Complaint at ¶ 48), nor to "reverse Local 46's decision to penalize Plaintiff pursuant to the charges filed against him. Id. at ¶ 73. Plaintiff contends that IATSE is liable as Local 46's parent, citing Alexander v. Local 496, Laborer's International Union of North America, 177 F.3d 394, 409 (6th Cir. 1999). Alexander is a Title VII action that also had a claim under 42 U.S.C. § 1981 and is not controlling on Plaintiff's LMRA claims. For any agency relationship between IATSE and Local 46, the Plaintiff must plead facts of IATSE's representation or that International IATSE exercised control of Local 46. F.A. Villalba & Co v. United Asso. of Journeyment & Apprentices of Plumbing & Pipefitting Industry, 413 F.Supp.94 (W.D. Tex. 1976). Here, Plaintiff does not allege any such facts.

In any event, for his LMRA claim, Plaintiff must also exhaust reasonable hearing procedures before filing his legal action. 29 U.S.C. § 411(a)(4). This exhaustion requirement "defer[s] judicial consideration of disputes arising over internal Union matters such as those involving the interpretation and application of a Union constitution." Clayton v. International Union, UAW, 415 U.S. 679, 688 (1981). "[C]ourts have discretion to decide whether to require exhaustion of internal union procedures." Id. at 689. "Where internal union appeals procedures can result in either complete relief to an aggrieved employee or reactivation of his grievance, exhaustion would advance the national labor policy of encouraging private resolution of contractual labor disputes. In such cases, the internal union procedures are capable of fully resolving meritorious claims short of the judicial forum." Id. at 692. "Thus, federal policy requires 'staying the hand of judicial interference' with the internal affairs of a labor organization until it has had [an] opportunity to resolve disputes concerning its own internal affairs." Willetts

v. Ford Motor Co., 583 F.2d 852, 856 (6th Cir. 1978). Exhaustion is especially appropriate where the claims concern internal Union affairs. Geddes v. Chrysler v. Corp., 608 F.2d 261, 264 (6th Cir. 1979). The Court does not discern any basis not to require exhaustion of the union grievance process that Plaintiff initiated. Because the Plaintiff failed to exhaust his intra-union remedies prior to filing this action, the Court concludes Plaintiff's LMRA claims must be dismissed without prejudice.

Plaintiff's claims under 29 U.S.C. § 187(a) requires a secondary boycott in violation of 29 U.S.C. § 158(b)(4). F.A. Wilhelm Const. Co. v. Kentucky State District Council of Carpenters, 293 F.3d 935, 940-41 (6th Cir. 2002). Plaintiff's amended complaint fails to allege a secondary boycott or International IATSE's involvement in a secondary boycott. Plaintiff's Section 187 claim fails to state grounds for relief.

As to his state law claims, Plaintiff is a Tennessee citizen and the CMA is a Tennessee not for profit corporation that has its business in Nashville. Thus, a lack of complete diversity among the parties exists and the Court lack jurisdiction under 28 U.S.C. § 1332. Owen Equip & Erection Co. v. Kroger, 437 U.S. 365, 373 (1978). Thus, Plaintiff's state law claims must be dismissed as to all Defendants for lack of subject matter jurisdiction.

As to the Defendant's MTVN's and CMT's motion for sanctions, that motion raises substantial issues, but those motions are based on Plaintiff's state law claims. With the dismissal of Plaintiff's state law claims, the Court deems it inappropriate to consider that motion that is denied without prejudice.

As to Plaintiff's motion to filed a second amended complaint, that motion cites Plaintiff's receipt of his right to sue letter. To allow Plaintiff to comply with the right to sue letter, the

7

motion should be granted, but for the reasons stated, the Title VII claim lacks merit under Title VII as a matter of law and should be dismissed.

An appropriate Order is filed herewith.

**ENTERED** this the ___29th___ day of September, 2009.

WILLIAM J. HAYNES, JR.
United States District Judge